**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

RECEIVED

MAY 1 0 2024

U.S. District Court
Middle District of TN

|  |  |  |
|---|---|---|
| **RICKY M. HELTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No:** _____ |
| | ) | |
| **BILL LEE, Governor of the State of** | ) | |
| **Tennessee and DAVID RAUSCH, Director** | ) | |
| **of the Tennessee Bureau of Investigation,** | ) | |
| **in their official capacities,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**COMPLAINT UNDER 42 U.S.C. § 1983**
**FOR INJUNCTIVE AND DECLARATORY ORDER**

Comes now, Plaintiff, Ricky Helton, a Tennessee State prisoner, pro se, and files this civil

rights action for injunctive and declaratory relief under 42 U.S.C. § 1983 alleging: denial of equal

protection, denial of Due Process, cruel and unusual punishment in violation of the Ex Post Facto

Clause, in violation of the Fifth, Eighth, and Fourteenth Amendment, and Section 1 of the United

States Constitution and Const. art 1 § 10 cl. 1.

**INTRODUCTION**

1.     Plaintiff is a Tennessee resident who has been retroactively required to comply with

the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and

Tracking Act of 2004 for the rest of his life. See Tennessee Code Annotated §§ 40-39-201 – 40-

39-218 (2016) (the "Act").

1

2.     Plaintiff was convicted on November 23, 2009 of violation of Sex Offender Registry/Monitoring Act, aggravated sexual battery x2, and received a total of sixteen (16) years.

3.     Under the Act and upon release, Plaintiff will be subjected to constant supervision by hostile law enforcement officers; required to report in person every calendar quarter and for numerous other reasons on forty-eight hours' notice; banned from living or working in many areas; restricted as to when he can travel; limited in his rights to free speech; hindered from maintaining normal family relationships; identified publicly and falsely as "violent;" and subjected to a vast array of state-imposed restrictions that encompass virtually every facet of his life. Plaintiff must comply with these extensive restrictions and obligations for as long as he lives or face severe criminal sanctions.

4.     Plaintiff asks this Court to recognize what other courts across the country have increasingly found: that the nature of sex offender registration has fundamentally changed since 2003, when the U.S. Supreme Court upheld a registration scheme that imposed only "minor and indirect" restraints on registrants. *See Smith v. Doe*, 538 U.S. 84, 100, 1235 D.Ct. 1140, 155 L.Ed.2d 164 (2003).

5.     Numerous courts including the United States Court of Appeals for the Sixth Circuit—have now recognized that the retroactive application of sex offender registration schemes and their associated restrictions violate the constitutional prohibition against *ex post facto* laws. *See, e.g., Doe v. Miami-Dade County*, No. 15-14336, __ F.3d __, 2016 WL 5334979 (11th Cir. Sept. 23, 2016) (slip opinion); *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016); *U.S. v. Juvenile Male*, 590 F.3d 924 (9th Cir. 2009); *vacated as moot*, 131 S.Ct. 2860 (2011); *State v. Williams*, 952 N.E.2d 1103 (Ohio 2011); *Wallace v. State*, 905 N.E.2d 371 (Ind. 2009); *State v. Letalien*, 985 S.2d 4 (Me. 2009); *Commonwealth v. Baker*, 295 S.W.3d 437 (Ky. 2009); *Doe v. State*, 189 P.3d

2

999 (Alaska 2008); *see, also, Doe v. Swearingen*, No. 4:1-cv-501-RH/CAS, prelim. inj. at 11 (N.D. Fla. Sept. 27, 2016) (Florida sex offender registry law requirement to report all "internet identifiers" unconstitutionally vague). *In re W.Z.*, 957 N.E.2d 367 (Ohio Ct. App. 2011) (automatic classification of juvenile as Tier III sex offender required to register for life based solely on crime of conviction violates due process).

6.      The Act imposes such extensive and punitive restrictions on Plaintiff that it violates the constitutional prohibition against *ex post facto* laws.

7.      The Act violates Plaintiff's rights to travel, work, speak, associate, and raise potential children, without being narrowly tailored to meet a compelling state interest.

8.      The Act violates the Due Process Clause because it requires Plaintiff to register for life and publicly and falsely labels him as "violent."

9.      The Act violates the Due Process Clause because it imposes criminal liability for purely passive acts that are not *mal in se*, and therefore do not "alert the doer to the consequences of his deed," without any proof of "actual knowledge of the duty to [comply with the law] or proof of the probability of such knowledge and subsequent failure to comply." *Lambert v. People of the State of California*, 355 U.S. 225, 228-229, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957). Rather, the Act imposes criminal liability solely on the basis that the defendant "knowingly" commits various innocent acts, such as standing idly within 999 feet of a school or park instead of 1001 feet. *See* T.C.A. § 40-39-211(d) (2016).

10.     The Act violates the Due Process Clause because many of its provisions are void for vagueness. Plaintiff is liable for complying with a sweeping and complex law—and faces a felony conviction and mandatory minimum of ninety (90) days of incarceration for a first offense. *See* T.C.A. § 40-39-208(b) and (c) (2016) —even though the language of the Act does not provide

3

clear notice of what is prohibited or required, either for those subject to it or for those who enforce it, making full compliance with the Act impossible.

11.     Plaintiff seeks declaratory and injunctive relief barring the Act's application to him.

## JURISDICTION AND VENUE

12.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1391 in that this civil action is arising under the Constitution of the United States. Furthermore, jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1334(a).

13.     Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201-2202, by Fed. R. Civ. P. 57 and 65, and by the legal and equitable powers of this Court.

14.     Venue is proper in this federal judicial district pursuant to 28 U.S.C. § 1391, because a substantial portion of the events or omissions giving rise to these claims occurred in Davidson County, Tennessee, within this judicial district, and because Defendants, in their official capacity resides in and/or regularly conducts business within this judicial district, and thus, is subject to personal jurisdiction within this judicial district.

## PARTIES

15.     Plaintiff, Ricky Helton as all times relevant is confined by the Tennessee Department of Correction at Bledsoe County Correctional Complex, 1045 Horsehead Lane, Pikeville, TN 37367-7432.

16.     Defendant, Bill Lee is Governor of the State of Tennessee. His office is located at State Capitol, 1st Floor, Nashville, TN 37243-0001.

17.     Defendant, David B. Rausch is Director of the Tennessee Bureau of Investigation (TBI). His office is located at 901 R.S. Gass Boulevard, Nashville, TN 37216-2639.

4

## EXHAUSTION OF AVAILABLE REMEDIES

18.    There are not any administrative remedies available prior to filing this Complaint.

## FACTUAL STATEMENT

19.    As set forth herein, it has become impossible to decipher the dictates of the Tennessee Sex Offender Registry and its full constitutional violations of: denial of equal protection, denial of Due Process, cruel and unusual punishment, violation of Ex Post Facto, in violation of the Fifth, Eight, and Fourteenth Amendment, Section 1 of the United States Constitution and Const. art. 1 § 10 cl. 1.

## FACTUAL ALLEGATIONS
## THE DEFENDANTS

20.    Defendant Bill Lee is governor of the State of Tennessee. He is sued in his official capacity.

21.    Pursuant to Article III, § 1 of the Tennessee Constitution, the supreme executive power of the state is vested in the governor. The Tennessee Constitution further provides that the governor shall take care that applicable federal and state laws are faithfully executed. Tenn. Const., Art. III, § 10. Governor Lee is ultimately responsible for the enforcement of the laws of this state and for supervision of all state departments, including the Tennessee Bureau of Investigation (the "TBI").

22.    Governor Lee is an appropriate defendant in a case challenging the constitutionality of the Act.

23.    Defendant David B. Rausch is the Director of the TBI. He is sued in his official capacity.

24.    The Act requires the TBI to maintain Tennessee's sex offender registry. T.C.A. §§ 40-39-204(a) and 40-39-205(a) (2016). The TBI's responsibilities include enforcing the Act,

maintaining the state's database of sex offenders, maintaining an Internet-accessible public sex offender registry, registering offenders (along with other law enforcement agencies), developing registration forms, providing statutorily-required notices to registrants, collecting registration fees, and coordinating with national law enforcement and national sex offender registry. *See* T.C.A. §§ 40-39-204(a) and (d), 40-39-205(a) and (f), 40-39-206 (2016).

25.     The director of the TBI is an appropriate defendant in a case challenging the constitutionality of the Act.

## FACTUAL ALLEGATIONS: HISTORY OF THE ACT

26.     The Tennessee General Assembly passed its first sex offender registration law in 1994. 1994 Tenn. Pub. Acts, ch. 976. Until that time, Tennessee did not require anyone to register as a sex offender for any purpose.

### 1994 Tenn. Pub. Acts

27.     The 1994 Act required the TBI to maintain a confidential registry with basic information about people convicted of sex offenses: full name and aliases, date and place of birth, social security number, driver's license number, parole or probation officer contact information, offenses of conviction, current place of employment, current address, and any other information required by TBI regulation. 1994 Tenn. Pub. Acts, ch. 976 § 4. The information in the registry was expressly designated confidential and available only to law enforcement. *Id.* § 7(c).

28.     People convicted of sex offenses had to register within ten days of release from probation, parole, or incarceration without supervision, report a change of residence within ten days, and report temporarily residing in a municipality or county within ten days. 1994 Tenn. Pub. Acts, ch. 976, § 4. After initial registration, the TBI was required to send a registrant a verification

6

and monitoring form every ninety days, which the registrant had to complete within ten days of receipt. *Id.* § 5.

29. The 1994 Act did not require in-person registration or reporting. Registrants only had to complete the required form and "cause such form to be delivered to TBI headquarters in Nashville." 1994 Tenn. Pub. Acts, § 976, §§ 4-5.

30. Under the 1994 Act, registrants could petition a court for relief from the Act's requirements ten years after release from probation, parole, or incarceration without supervision. 1994 Tenn. Pub. Acts, § 976, § 8. The court was required to grant petition if it found the registrant had complied with the Act, was rehabilitated, and did not pose a threat to public safety. *Id.* § 8(c). If the petition was granted, the TBI was required to expunge the registrant's data from its registry. *Id.*

31. The 1994 Act applied to people convicted of sex offenses on or after January 1, 1995. The 1994 Act also applied retroactively to people whose convictions occurred before the date if they were still incarcerated or on probation or parole as of that date. 1994 Tenn. Pub. Acts, ch. 976 § 3(2). Thus, a person who completed his sentence before the effective date was not required to register.

32. The Tennessee General Assembly repeatedly amended the 1994 Act to expand its scope:

### 1996 Amendment

- People charged with sex offenses but placed on pre-trial and judicial diversion must register. 1996 Tenn. Pub. Acts, § 834, § 1.

7

## 1997 Amendment

- People on pre-trial and judicial diversion must register even after completing diversion and having their judicial records expunged. 1997 Tenn. Pub. Acts, § 455, § 3.

- Registry information is made public for offenses committed after July 1, 1997, and made accessible via the Internet and a toll-free telephone number. 1997 Tenn. Pub. Acts, § 461, § 2.

- People convicted of the non-sexual offenses of false imprisonment of a minor, kidnapping of a minor, aggravated kidnapping of a minor, and especially aggravated kidnapping of a minor must resister as "sexual offenders." 1997 Tenn. Pub. Acts, § 466, § 1, codified at T.C.A. § 40-39-102(3)(A)(xi)–(xiv) and (B)(xiii)–(xiv) (1997).

- The TBI is authorized to require registrants to provide a current photograph. *Id.* § 40-39-103(a)(10) and (b).

## 2000 Amendment

- A mandatory minimum 180-day sentence is imposed for any violation of registration requirements and is not subject to suspension, diversion, or probation. 2000 Tenn. Pub. Acts, § 882, § 1.

- Lifetime registration is required for people with more than one conviction for a sex offense or with a conviction for a "violent sexual offense," defined as actual or attempted aggravated rape, rape, aggravated sexual battery, or rape of a child. 2000 Tenn. Pub. Acts, § 997, §§ 1-2.

8

- Registrants must report within ten days of coming into a municipality or county in which they work or are students. 2000 Tenn. Pub. Acts, § 997, § 3.

**2002 Amendment**

- Registrants must report within ten days of being employed or becoming a student or volunteer at an institution of higher learning in the county or municipality in which they reside, and the name and address of that institution is added to the registry and made public for registrants who committed offenses after October 27, 2002. 2002 Tenn. Pub. Acts, § 469, §§ 3, 5, and 11.

33.    Although the General Assembly repeatedly expanded the scope of the 1994 Act, the law fundamentally required only registration and periodic reporting and did not impose any limits on where a registrant could live, work, or go. That changed in 2003, when the General Assembly prohibited registrants from:

- Establishing a residence or accepting employment with 1,000 feet of a school or child care facility;

- Establishing a residence or accepting employment within 1,000 feet of the victim's or victim's immediate family member's home;

- Coming within one hundred feet of the victim;

- Establishing a residence or other living accommodation with a minor or other than the registrant's child; or

- Establishing a residence or other living accommodation with the registrant's minor child if:

9

- o The registrant's parental rights have been or are being terminated; or

- o Any child of the registrant has been a victim of sexual abuse by the registrant.

- o 2003 Tenn. Pub. Acts, § 95, § 1. A violation of these prohibitions was a Class A misdemeanor. *Id.*

### Repeal of the 1994 Act and Adoption of the Current Act

34. The 1994 Act was repealed and replaced with the current Act in 2004. 2004 Tenn. Pub. Acts, § 921, codified at T.C.A. §§ 40-39-201 through 40-39-211 (1994). The Act dramatically expanded the scope and burden of the 1994 Act in several respects:

- Registrants were classified as "sexual offenders" or "violent sexual offenders," T.C.A. § 40-39-202(9) (2004), with "violent sexual offenders" required to register for life. *Id.* § 40-39-207(g).

- The non-sexual offenses of false imprisonment and kidnapping where the victim is a minor, as well as solicitation of, conspiracy to commit, criminal responsibility for, facilitation of, and being an accessory after the fact to those non-sexual offenses, are defined as "sexual offenses" and "violent sexual offenses." *Id.* § 40-39-202(16) and (24).

- Reports had to be made in person. *Id.* §§ 40-39-203 and 40-39-204.

- Reports were required after certain triggering events (e.g., change of residence) had to be made within forty-eight hours of the event, and additional triggering events were specified (e.g., change of job, re-incarceration for any offense). *Id.* §§ 40-39-203 and 40-39-204(e).

10

- Registrants designed as "sexual offenders" had to report annually within seven days of their birth date to verify their registration information and update their finger prints, palm prints, and photographs. Registrants designated as "violent sexual offenders," such as Plaintiff, had to report and provide the same information quarterly. All registrants had to pay an annual administrative fee. *Id.* § 40-39-204(b) and (c).

- Registrants had to disclose more information, including the contact information of their nearest living relative, whether any minors live with them, and information about any automobiles, mobile homes, or boats they lived in. *Id.* § 40-39-203(h).

- Registrants not subject to lifetime registration could no longer petition a court for removal from the registry, but had to apply to the TBI for removal from the registry. *Id.* § 40-39-206(c).

- Any violation of registration requirements—including untimely registration, untimely reporting, failure to sign the registration form, failure to pay the administrative fee—was now a felony instead of a misdemeanor. *Id.* § 39-16-208.

### 2005 Amendment

- Registrants must report any employment, not just employment of more than fourteen days; any place they reside more than five consecutive days as their "primary residence;" and any place they reside more than fourteen days in a year as their "secondary residence." 2005 Tenn. Pub. Acts, ch. 316, § 1, codified at T.C.A. §§ 40-39-202(4), (11), (15) and 40-39-203(a) (2005).

11

- Registrants must report all automobiles, mobile homes, and boats. *Id.* § 40-39-203(i)(10).

- The annual administrative fee registrants must pay is increased from $60 to $100. *Id.* § 40-39-204(b)–(c).

### 2006 Amendment

- Registrants whose victims were minors are prohibited from living, obtaining sexual offender treatment, or working within 1,000 feet of a school, day care center, public park, playground, recreation center, or public athletic field available for use by the general Pub. 2006 Tenn. Pub. Acts., ch. 890, § 20.

### 2007 Amendment

- Registrants must report within forty-eight hours of the "material change in employment or vocational status." 2007 Tenn. Pub. Acts, ch. 126, § 1, codified at T.C.A. § 40-39-203(a)(3) (2007).

- All registrant information, regardless of the date of offense, is now public. 2007 Pub. Acts, ch. 531, § 1.

### 2008 Amendment

- Registrants must report any change to their "electronic mail address information, and instant message, chat, or other Internet communication name or identity information that the person uses or intends to use," which information is now included on their publicly available registration. 2008 Tenn. Pub., ch 979, § 1.

- The TBI is authorized to share this information with businesses that offer "electronic communications or remote computing services" for "prescreening users" in exchange for the businesses notifying the TBI if a registrant is using their system. *Id.*

- Registrants whose victims were minors are prohibited from dressing as a "real or fictional person or character" or "member of a profession, vocation, or occupation while in the presence of a minor, or with the intent to attract or entice a minor to be in the presence of the offender." For example, such a registrant may not dress as a clown at a children's birthday party. 2008 Tenn. Pub. Acts, ch. 1164 § 13.

- Registrants whose victims were minors may not engage in any employment that causes them to be in direct and unsupervised contact with a minor, nor may they operate an ice cream truck or an "emergency vehicle" for the purpose of "attracting or enticing a minor to be in the presence of the offender." *Id.*

**2009 Amendment**

- All registrants (not just registrants whose victims were minors) are forbidden to be on the premises of a school, day care center, public park, playground, recreation center, or public athletic field available for use by the general public if they have reason to believe children are present. 2009 Tenn. Pub. Acts ch. 597, § 1.

- All registrants are forbidden to stand or "sit idly" within 1,000 feet of those locations when children are present unless they have custody or

13

responsibility for a child there or another "specific or legitimate reason for being there." *Id.*

### 2010 Amendment

- Registrants must provide copies of their passports and immigration documents and professional licensing information. 2010 Tenn. Pub. Act, ch. § 7.

- Registrants must maintain a valid driver's license or photo identification card labeling them as "sexual offenders" or "violent sexual offenders" and must always have it in their possession. *Id.*, §13.

- No more than two registrants may live in the same residence. 2010 Tenn. Pub. Act. ch. 1145, § 1.

### 2011 Amendment

- Registrants must report twenty-one days before traveling out of the country or, with the designated law enforcement agency's prior written approval, twenty-four hours before traveling. 2011 Tenn. Pub. Act. ch. 266, § 1.

- Public library directors are authorized to prohibit registrants from library premises. 2011 Tenn. Pub. Act. ch. 287, § 1.

### 2014 Amendment

- All registrants (not just registrants whose victims were minors) are prohibited from living or working within 1.000 feet of a school, day care center, public park, playground, recreation center, or public athletic field available for use by the general public. 2014 Tenn. Pub. Act. ch. 992, § 1.

14

- Local governments are authorized to establish "community notification systems" to notify residents, schools, and childcare facilities when a registrant resides within a certain distance of those locations and to charge a fifty dollar fee to registrant to pay for the system. 2014 Tenn. Pub. Act. ch. 751, § 1. Authorized forms of notice include a "community notification flyer" delivered to all legal residents within a specified area and publication by newspaper or Internet. *Id.*

### 2015 Amendment

- Registrants are prohibited from being "alone" with a minor in a "private area." Tenn. Pub. Act. ch. 516, § 1. A registrant is "alone" with a minor if there are no other adults present, or if there are other adults present but they are "asleep, unconscious, or otherwise unable to observe" the registrant and minor, "unable or unwilling to come to the aid of the minor" if necessary, or are themselves registrants. *Id.*

- Registrants must report e-mail, social media, and instant message accounts, "other Internet communication platforms or devices," and usernames, screen names, or other methods used to access those accounts or web sites. *Id.* 7.

35. In sum, Tennessee's sex offender registry law began as a private law enforcement database in 1995, but has changed radically in the last twenty-plus years. Its present form, the Act, subject registrants to obligations, restraints, disabilities, and punishment of a different character and a greater order of magnitude than those imposed by the 1994 Act or even by the Act in its original form.

15

## FACTUAL ALLEGATIONS
## SEX OFFENDER CLASSIFICATION AND
## RETROACTIVE APPLICATION OF THE ACT

36.     The Act classifies registrants as "sexual offenders," "violent sexual offenders," and "violent juvenile sexual offenders." Tenn. Code Ann. § 40-39-202(9) (2016). A registrant's classification determines the length of time that a person must register and the frequency of reporting. See *id.* §§ 40-39-204 and 40-39-207(g).

37.     "Sexual offenders" must register and comply with all obligations imposed by the Act for at least ten years, while "violent sexual offenders" must register and comply for life. *See* Tenn. Code Ann. § 40-39-202(19), (20), (30), and (31) (2016).

38.     A registrant's classification is not based on, and does not correspond to, an individualized assessment of a registrant's actual risk of re-offending or the danger any registrant poses to the public.

39.     The 1994 Act did not have separate classification and granted registrants the right to seek removal from the registry after ten years. *See* 1994 Tenn. Pub. Act. ch. 976, § 8. The 1994 Act was amended in 2000 to require lifetime registration for people with more than one conviction for a sex offense or with a conviction for a "violent sexual offense," defined as actual or attempted aggravated rape, rape, aggravated sexual battery, or rape of a child. 2000 Tenn. Pub. Act. ch. 997, § 1-2. The amendment was applied retroactively.

40.     The lifetime registration requirement was included in the current Act and expanded to apply to anyone classified as a "violent sexual offender," and also applied retroactively. Tenn. Code Ann. § 40-39-207(g)(1) (2016).

41.     Thus, Plaintiff, must now register for life, without any individualized determination about his risk or whether lifetime registration is warranted.

16

42. Even upon the clearest proof that Plaintiff is not dangerous, there is no mechanism under the Act that would allow Plaintiff to have his registration obligations eliminated or reduced.

## FACTUAL ALLEGATIONS
## IMPACT OF THE ACT ON THE PLAINTIFF

43. The Act imposes obligations, disabilities, and restraints that are so extensive they cannot be set out in full here.

44. By way of summary, the Act subjects Plaintiff to continuous reporting, surveillance, and supervision. In addition, the Act severely limits his ability to direct the potential upbringing of his children and grandchildren; find housing and employment; get an education; travel; engage in speech activities (including use of the Internet); be free from harassment and stigma; and understand what is required of him under the Act.

45. Finally, registration under the Act triggers a vast array of additional obligations, disabilities, and restraints under other federal, state, and local laws, as well as private policies barring or limiting registrants from access to goods or services available to the public.

### A. Reporting, Surveillance, and Supervision

46. As a "violent sexual offender," Plaintiff must report in person every March, June, September, and December. Tenn. Code Ann. § 40-39-204(b)(1) (2016), and must verify and update the following information:

    a) Plaintiff's complete name and all aliases;

    b) Plaintiff's date and place of birth;

    c) Plaintiff's social security number;

    d) A photocopy of Plaintiff's driver license;

    e) Sexual offenses or violent sexual offenses for which Plaintiff has been convicted, the date of the offenses, and the county and state of each conviction;

f) Name of any of Plaintiff's current employers and length of employment, including physical addresses and phone numbers;

g) Plaintiff's current physical address, and length of residence at that address, including any primary or secondary residences;

h) Plaintiff's mailing address, if different from Plaintiff's physical address;

i) Any vehicle, mobile home, trailer, or manufactured home used or owned by Plaintiff, including descriptions, vehicle information numbers, and license tag numbers;

j) Any vessel, live-aboard vessel, or houseboat used by Plaintiff, including the name of the vessel, description, and all identifying numbers;

k) Name and address of each institution of higher education in this state where Plaintiff is employed or practices a vocation or is a student;

l) Plaintiff's gender;

m) Name, address, and phone number of Plaintiff's closest living relative;

n) Whether victims in the underlying offenses were minor or adults, the number of victims, and the correct age of the victim or victims and of Plaintiff at the time of the offense or offenses, if the ages are known;

o) Verification by the TBI or Plaintiff that the TBI has received Plaintiff's DNA sample;

p) A complete listing of Plaintiff's electronic mail address information, including usernames, any social media accounts Plaintiff uses or intends to use, instant message accounts, other Internet communication platforms or devices, and

> Plaintiff's username, screen name, or other method by which Plaintiff accesses these accounts or web sites;

q) Whether any minors reside in Plaintiff's primary or secondary residences;

r) Any other registration, verification, and tracking information, including fingerprints and a current photograph of Plaintiff, his vehicles, and his vessels, required by TBI rules;

s) Copy of Plaintiff's passport; and

t) Professional licensing information that authorizes Plaintiff to engage in an occupation or carry out a trade or business.

Tenn. Cod. Ann. § 40-39-203(i) (2016).

47. The Act requires Plaintiff to provide a "current" photograph, Tenn. Code Ann. § 40-39-203(i)(19), which means if Plaintiff's appearance changes, he must update the photograph within forty-eight hours. *Id*. § 40-39-203(a)(4).

48. In addition to reporting in person at regular intervals, Plaintiff must report in person within forty-eight hours if any of the information above changes. Tenn. Code Ann. § 40-39-203(a)(4). For example, Plaintiff must report in person within forty-hours if he changes his address, changes jobs, changes his email address, opens a Facebook account, buys or begins using a vehicle, or stops using a vehicle.

49. There are no "good cause" exceptions to the reporting requirements or to the forty-eight hour notification requirements. Regardless of illness, injury, transportation problems, or other emergencies, Plaintiff must report in person within forty-eight hours or face criminal charges.

19

50.     The Act's reporting, surveillance, and supervision requirements are similar to, but more restrictive and onerous than, the reporting, surveillance, and supervision that Plaintiff experienced while serving as sentence on probation.

51.     For example, if Plaintiff was on probation and has been accused of violating his probation terms, the maximum sanction will be to serve his sentence. Under the Act, Plaintiff faces arrest and prosecution on a felony charge for each alleged violation of the law.

52.     The fundamental difference between the reporting surveillance, and supervision requirements of probation and those of the Act is that probation is based on the premise that convicted persons like Plaintiff can be rehabilitated and prepared to be productive members of society once they have served their sentence, while the premise of the Act is that Plaintiff is and will always be a menace to society, regardless how many years Plaintiff lives peaceably, productively, and without criminal conduct.

53.     Under the Act, Plaintiff must report significantly more information than what he was required to report if he was serving a sentence on probation.

54.     The Act's requirement that minor changes be reported in person within forty-eight hours is a level of reporting that far exceeds what Plaintiff would experience if he was serving a sentence on probation.

55.     As a result of the Act's immediate reporting requirements, Plaintiff must, for the rest of his life, report in person to law enforcement with a frequency that is greater than any reporting obligations when a person is on probation.

56.     For Plaintiff, the lifetime surveillance imposed by these reporting requirements is not only intrusive but burdensome. Each time Plaintiff must report, registration can take up to five

20

hours, not including traveling time. Plaintiff cannot even pay his annual registration fee without appearing in person because the law arbitrarily commands such in-person reporting.

## B. Family

57.    The Act places great stress on family relationships. It places stress on all of the family members especially the family whom are listed on the registry. Plaintiff's public status as a registered sex offender and the resulting interactions with law enforcement officials punishes family members who reside with Plaintiff or uses the same automobiles, boats, etc.

## C. Housing

58.    The Act severely limits Plaintiff's access to housing. The Act bars Plaintiff from "residing" within 1,000 feet of any "public school, private or parochial school, licensed day care center other child care facility, public park, playground, recreation center or public athletic field available for use by the general public," making a substantial amount of housing unavailable as a matter of law. Tenn. Code Ann. § 40-39-211(a)(1) (2016).

59.    Plaintiff is prohibited from residing with a minor. Tenn. Code Ann. § 40-39-211(c) (2016). Plaintiff will be unable to stay with relatives who have children, or in an apartment or duplex where any adult lives with children because the TBI arbitrarily claims the buildings as single residences.

## D. Employment

60.    The Act bars Plaintiff from working within 1,000 feet of any "public school, private or parochial school, licensed day care center, other child care center, other child care facility, public park, playground, recreation center or public athletic field available for use by the general public," making a substantial number of employments unavailable as a matter of law. Tenn. Code Ann. § 40-39-211(a)(1) (2016).

21

## E. Education

61.     The Act makes it more difficult for Plaintiff to get continued education. Plaintiff's sex offender registration must include the name and address of each institution of higher education where Plaintiff is a student. Tenn. Code Ann. § 40-39-211(i)(12) (2016), and the TBI must provide Plaintiff's registration information to any school in which Plaintiff becomes a student, *id.* § 40-39-214(a)(2) (2016).

## F. Travel

62.     Plaintiff's status as a registrant severely restricts his ability to travel. Plaintiff must provide at least twenty-one days' advance notice before traveling out of the country. Tenn. Code Ann. § 40-39-204(h) (2016). This requirement is particularly burdensome because Plaintiff will be severely restricted when traveling with his family or friends.

63.     In addition, Plaintiff must plan his travel so that he is able to register in person quarterly, as required by the Act. Tenn. Code Ann. § 40-39-204(b) (2016).

64.     If Plaintiff travels, he must comply with any applicable sex offender registration laws in other jurisdictions. Depending on how long he travels, he may have to register as a sex offender. Because sex offender registration laws are exceedingly complex and vary from state to state, it is extremely difficult to obtain accurate information about either affirmative reporting obligations (such as registering one's presence in a state) or prohibitions on ordinary behavior (such as visiting a library or park) in other jurisdictions.

65.     For example, under Florida law, a person registered as a sex offender in one state must register within forty-eight hours of establishing a "temporary residence," which is "a place where the person abides, lodges, or resides, including, but not limited to, vacation, business, or personal travel destinations in or out of this state, for a period of five or more days in the aggregate

22

during any calendar year and which is not the person's permanent address...." *Id.* § 943.0435(1)(f) and § 775.21(2)(m). Thus, if Plaintiff goes on vacation or to visit family and stays in a hotel or with family for more than five days in Florida, Plaintiff must register in the county in which the hotel or residence is located. Yet, having registered in Florida, Plaintiff must report forty-eight hours before leaving Florida. *Id.* § 943.0435(7). Thus, if Plaintiff stays in Florida for six days, it is impossible for him to comply with the law unless he knows to register early enough so that he can then give forty-eight hours' notice of his intention to leave.

66.· As a result of Plaintiff's status as a registrant, U.S. Customs and Border Protection ("CBP") agents notoriously subject Plaintiff to intense scrutiny when re-entering the country. Sex offenders are invariably "flagged" upon re-entry due to being listed on the registry.

67. As a result of Plaintiff's registered sex offender status, some foreign countries prohibit sex offenders from entering their country. This prevents Plaintiff from traveling with his family for vacation and tourism and from pursuing any potential business ventures in various countries.

68. Plaintiff's fears of further restrictions on his ability to travel abroad are well-founded. On February 8, 2016 President Obama signed into law an act entitled the "International Megan's Law to Prevent Child Exploitation and Other Sexual Crimes Through Advanced Notification of Traveling Sex Offenders," Pub. Law No. 114-119, 130 Sta. 15 (2016). That law generally authorizes the federal government to give "advance notice" to a foreign country when a registered sex offender is traveling to that country, *id.* § 4(e)(3), and makes it a federal crime for a registered sex offender to fail to report information on intended international travel, *id.* § 6(a). The law also requires that passports issued to persons registered as sex offenders have a "unique identifier" indicating their status. *Id.* § 8.

23

69. It is almost certain that any country receiving advance notice that Plaintiff intends to travel to that country will prohibit Plaintiff's entry. Thus, the requirement under Tennessee law that Plaintiff register as a sex offender will likely bar him from traveling anywhere else in the world.

## G. Speech and Internet

70. The Act severely restricts Plaintiff's ability to speak freely. Plaintiff not only must provide law enforcement with all electronic mail, addresses, instant message addresses, log-in names, or other identifiers that are assigned to or routinely used by him, Tenn. Code Ann. § 40-39-203(i)(17) (2016), but must also report within three days whenever he establishes any electronic mail address, instant message address, or other designation used in Internet communications or postings, *id.* 40-39-203(a)(7) (2016).

71. Plaintiff is concerned about using the Internet because the Act is unclear about whether for example, he must report if he sets up an on-line account to pay his taxes, gas bill, water bill, electric bill, or mortgage, registers with movie streaming services, purchases or reviews products on Amazon.com, or even opens a PACER account or and CM/ECF account with this Court.

72. Plaintiff will be unable to use the Internet because, under the Act, he would be required to register all email and Internet identifiers and would need to report constantly in order to use different websites with different user-names.

73. Plaintiff would like to be able to communicate with his family on Facebook and participate on other social media platforms like Twitter, Threads, Nextdoor, but will not be able to do so because he would have to register information about each account. As a result, he cannot

24

view or share family photographs, stay in touch with relatives, interact with friends and acquaintances or participate in community discussions.

74. In addition, Plaintiff is afraid that because he must provide all email and Internet identifiers pursuant to the Act, his Internet use will be monitored. That fear is well-founded because the Act expressly authorizes such monitoring:

> Registry information regarding all registered offender's electronic mail address information, any instant message, chat or other Internet communication name or identity information may be electronically transmitted by the TBI to a business or organization that offers electronic communication or remote computing services for the purpose of prescreening users or for comparison with information held by the requesting business or organization. **In order to obtain the information from the TBI, the requesting business or organization that offers electronic communication or remote computing services shall agree to notify the TBI forthwith when a comparison indicates that any registered sex offender's electronic mail address information, and instant message, chat or other Internet communication name or identity information is being used on their system.** The requesting business or organization shall also agree that information will not be further disseminated.

Tenn. Code Ann. § 40-39-203(m) (2016) (emphasis added).

75. Under the Act, Plaintiff cannot engage in anonymous political speech on the Internet because Plaintiff must publicly report the email address or other username he uses on any site such as Change.org or Whitehouse.gov. The United States Supreme Court has held that anonymous political speech exemplifies the purpose of the First Amendment:

> Under our Constitution, anonymous pamphleteering is not a pernicious, fraudulent practice, but an honorable tradition of advocacy and of dissent. Anonymity is a shield from the tyranny of the majority. *See generally* J. Mill, *On Liberty and Considerations on Representative Government* 1, 3-4 (R. McCallum ed. 1947). It thus exemplifies the purpose behind the Bill of Rights, and the First Amendment in particular: to protect unpopular individuals from retaliation–and their ideals from suppression–at the hand of an intolerant society.

25

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357, 115 S.Ct. 1511, 131 L.Ed. 2d 426 (1995). The anonymous online petitioner, blogger, and commenter is the modern version of the anonymous pamphleteer. The Act deprives Plaintiff of his constitutional right to engage in such protected speech.

### H. False Information and Public Stigmatization

76.      The sex offender registry stigmatizes Plaintiff and exposes him to public hostility by publicity and falsely labeling him as "violent" based solely on the statutory classification of his offense as a "violent sex offense." All offenders are given the same label no matter what type of conviction they were found guilty of or by plea bargain.

77.      The public registry website not only generates hostility toward Plaintiff, it enables anyone hostile toward Plaintiff because of his registry status to find him by posting extensive personal information about Plaintiff, including his residential address, employer address, date of birth, school information, vehicle information, physical description, and photograph. Tenn. Code. Ann. § 40-39-203(i) (2016). As a result, Plaintiff is exposed to a substantial risk of harassment and violence.

78.      Because Plaintiff is stigmatized as a "violent" sex offender on the public registry website, he and his family are subjected to harassment, mainly by law enforcement officers.

### I. Vagueness, Strict Liability, and Impossibility of Compliance

79.      The restrictions and obligations of the Act are so vague that Plaintiff is unable to know whether or not he is in violation of the law and are so extensive and pervasive that Plaintiff is literally unable to comply with the law.

80.     The Act's requirements for reporting personal information are so vague that Plaintiff does not understand what information must be reported or what changes in information subject him to the in-person, forty-eight hours reporting requirement.

81.     For example, the Act requires Plaintiff to report a "material change in employment or vocation status" within forty-eight hours and defines a "material change in employment or vocation statuses" to include "substantially changing the offender's hours of work at the same employment or vocation" or "any other change in the offender's employment or vocation that differs from that which the offender originally registered" if the change remains in effect for five consecutive days or more. Tenn. Code. Ann. § 40-39-203(a)(6) (2016). If Plaintiff takes a vacation of more than five days and does no work, he does not know whether he must report that period.

82.     The Act also requires Plaintiff to report any change to any information on his registration within forty-eight hours. Tenn. Code. Ann. § 40-39-203(a)(4) (2016). The information on his registration includes "any vehicle used or owned by an offender" and a "current photograph" of that vehicle. *Id.* § 40-39-203(i) (10) and (19). If Plaintiff borrows a car even once, Plaintiff does not know whether he must report that use. If Plaintiff's car breaks down so that he cannot use it, Plaintiff does not know if he has to report that he is no longer using the car. If Plaintiff gets in a wreck and the car sustains visible damage, Plaintiff does not know whether he must report and provide an updated photograph of the car. if Plaintiff has to use a rental car while his car is in the shop, Plaintiff does not know whether he must report that and then report again when he returns the rental car to the rental company.

83.     The Act prohibits Plaintiff from residing or working within 1,000 feet from the property line of any public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field available for use by

27

the general public, and prohibits Plaintiff from standing, sitting "idly," or remaining within that same distance of those locations if Plaintiff "has reason to believe" minors are present and does not have a "reason or relationship involving custody of or responsibility for" a minor or "any other specific or legitimate reason for being there." Tenn. Code. Ann. § 40-39-211(a) and (d) (2016). Plaintiff would not know if he is standing or sitting "idly" within 1,000 feet of one of these prohibited areas because the property boundaries are unknown and the distances are impossible to measure without sophisticated equipment.

84.     Plaintiff also cannot know whether a law enforcement officer will deem to have a "legitimate reason for being there" and is therefore subject to arbitrary arrest. Thus, Plaintiff is subject to arbitrary arrest and detention merely for being found within 1,000 feet of a prohibited area and declining to communicate with a police officer.

85.     Plaintiff must obtain and maintain a valid driver's license or photo identification and to "always have the license or identification card" in his possession. Tenn. Code. Ann. § 40-39-213(a) (2016). The law does not define "possession." Thus, it is unclear whether Plaintiff is in violation of the law in situations where he cannot have his identification on his person, for example, while swimming, sleeping, or exercising.

86.     The Act imposes criminal liability despite the impossibility of compliance. The Act imposes liability regardless whether illness, injury, or practical difficulties make compliance impossible.

87.     Plaintiff fears that, despite his best efforts to understand and comply with the law, and despite the absence of any intention to violate the law, he will be held criminally liable for any failure to comply. He knows that he can be punished with prison even if he does not know a

28

particular act or omission is illegal, because the Act imposes criminal liability solely on the basis that the defendant "knowingly" commits various innocent acts.

88. Any violation of the Act's requirements is a Class E felony, Tenn. Code. Ann. § 40-39-208(b) (2016), which carries a minimum sentence of one year and a maximum sentence of six years, *id.* 40-35-111(a)(5). People convicted of violating the Act's requirements, however, are subject to mandatory minimum sentences and fines of ninety days and $350 for the first offense, 180 days and $600 for the second offense, and one year and $1,100 for the third or subsequent offense. *Id.* 40-39-208(b), (c), (d), and (e).

### J. Consequences beyond the Act

89. Because Plaintiff must register as a sex offender under the Act, he is also subject to a vast and labyrinthine array of laws and ordinances imposed on registered sex offenders by the federal government, other state or tribal governments, and municipalities.

90. Because registration in one state generally triggers registration in another state, the fact the Plaintiff is subject to the Act means he is also subject to the sex offender registration laws of other jurisdictions if he travels or moves.

### FACTUAL ALLEGATIONS
### THE REQUIREMENTS OF THE ACT BEAR NO
### REASONABLE RELATIONSHIP TO THE RISK THAT INDIVIDUAL
### REGISTRANTS POSE TO THE COMMUNITY

91. Under the Act, the classification to which an individual is assigned ("sexual offender" or "violent sexual offender"), whether an individual is listed on the public registry, and how long an individual must register, are all based solely on the offense of conviction, not on an individualized assessment of the individual's actual level of risk. Tenn. Code. Ann. § 40-39-202(19), (20), (30), and (31) (2016).

29

92.     The Act even requires persons convicted of various non-sexual offenses to register as "sexual offender" or "violent sexual offender": conviction for soliciting, facilitating, attempting, conspiring to commit, committing, aiding and abetting, or being an accessory after the fact to the crimes of false imprisonment of a minor and kidnapping of a minor require registration as a sex offender. Tenn. Code. Ann. § 40-39-202(20) and (31) (2016). So, for example, if Person A falsely imprisons a child, flees, and takes shelter with Person B, who knowingly conceals him from the police, Person B is guilty of being an accessory after the fact to the false imprisonment of a child and must register as a "sexual offender." If, however, Person A commits aggravated kidnapping, Person B will be required to register as a "violent sexual offender" for life.

93.     Individuals classified as "violent sexual offenders" under the Act can pose a lower risk of reoffending than individuals classified as "sexual offenders." The result of this offense-based registration system is that the public's and law enforcement's ability to identify sexually dangerous persons is significantly reduced.

94.     Because recidivism risk declines significantly with advancing age and with time spent offense-free in the community, requiring registration for life for "violent sexual offenders" is both inefficient and unnecessary.

95.     In addition, the Act, by focusing on the danger posed by strangers (who can be identified through the registry), misidentified the source of risk. In the vast majority of cases of child sexual abuse, the offender was a family member or acquaintance, not a stranger listed on the registry.

96.     Public sex offender registration and residency restrictions, which focus on "stranger danger," give parents a false sense of security by implying that knowing where sex offenders live

30

or banishing them from the community in fact reduces the risk of sex offenses being committed, when such measures do not have this effect.

97.     In sum, the requirements of the Act bear no rational relationship to the risks that individual registrants pose to the community.

### FACTUAL ALLEGATIONS
### GEOGRAPHIC EXCLUSION ZONES

98.     Under the Act, IT IS A FELONY FOR Plaintiff to knowingly reside or work within 1,000 feet from the property line of any public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field available for use by the general public (an "Exclusion Zone"). Tenn. Code. Ann. § 40-39-208(a)(1) (2016). Plaintiff is also prohibited from standing, sitting "idly," or remaining within an Exclusion Zone if Plaintiff "has reason to believe" minors are present and does not have a "reason or relationship involving custody of or responsibility for" a minor or "any other specific or legitimate reason for being there." *Id.* § 40-39-211(d)(1).

99.     Although the Act requires Plaintiff's "knowledge" to establish a violation, Tenn. Code. Ann. § 40-39-211(a)(1) and (d)(1) (2016), police officers could consider Plaintiff's mere presence in and Exclusion Zone sufficient to establish probable cause, thus Plaintiff is subject to arrest any time he enters an Exclusion Zone.

100.    The State of Tennessee does not make maps available to the public or registrants showing where these Exclusion Zones are located or what their boundaries are.

101.    Furthermore, the Exclusion Zones can change on a moment's notice. For example, Plaintiff is prohibited from being within 1,000 feet of any "public athletic field available for use by the general public in this state when children" are present. Tenn. Code. Ann. § 40-39-211(d)(1)(B) (2016). If Plaintiff sits in his car 1,000 feet from the soccer field at a city park

31

anywhere in Tennessee when that field is empty, he is not in violation of the law, but the moment Plaintiff sees a child set foot on the soccer filed, Plaintiff is in violation of the law. Even if Plaintiff does not see the child, Plaintiff is subject to arrest at the whim of any investigating police officer, because that officer will conclude his mere presence gives the officer probable cause. Plaintiff might lawfully "sit idly" on a sidewalk bench on Monday and find himself charged with a felony on Tuesday because a day care opened within 1,000 feet of the bench.

102.    It is impossible for ordinary people to identify the areas that are inside and outside these Exclusion Zones. The task is difficult even for experts with sophisticated mapping technology. Distances are difficult to estimate or measure and property boundaries are difficult to locate. Moreover, Exclusion Zones often have irregular shapes, because they are measured from property boundaries and because the zones overlap. Exclusion Zones are not shaped like simple circles around a fixed point.

103.    It is impossible for Plaintiff to comply with the prohibition on standing, sitting, or remaining within an Exclusion Zone because that requires moment-to-moment knowledge of whether or not he is in an Exclusion Zone.

104.    The Exclusion Zones cover vast areas, especially in urban and suburban regions, because Exclusion Zones are measured as a crow flies, rather than as people actually travel between two points, some Exclusion Zones cover areas that are much further than 1,000 feet from a school, in terms of the travel distance.

105.    Exclusion Zones place a significant percentage of cities and towns off-limits. As a result, Exclusion Zones severely restrict access to employment and housing and limit registrants' ability to engage in normal human activity. For example, Knox County, Hamilton County, Davidson County, and Shelby County have hundreds of parks and greenways covering thousands

32

of acres, dozens of public community centers, hundreds of public and private schools, and hundreds of day care centers. Plaintiff cannot live or work within 1,000 feet of the property lines of any of those locations, and if there are any children present, he cannot "sit idly" or "remain" within 1,000 feet of their property lines either.

## FACTUAL ALLEGATIONS
## CENTRALITY OF REGISTRATION TO SENTENCING

106. Because of the severe burdens associated with sex offender registration, the issue of whether a conviction will result in registration is critical for criminal defendants.

107. The choice whether or not to plead guilty often turns on whether a defendant must register, for how long a defendant must register, and whether registration is public or private.

108. The Act fundamentally and retroactively alters the consequences of his sentence.

## FACTUAL ALLEGATIONS
## TENNESSEE'S STATUTES RULED UNCONSTITUTIONAL

109. This Federal District Court of Middle Tennessee as well as the Eastern District of Tennessee have held that the following Tennessee statutes relating to sex offender registration are unconstitutional. The affected statutes are:

a) Tenn. Code Ann. § 40-39-201 – Short title; general assembly; declarations. Ruled unconstitutional by *Doe #11 v. Lee*, 609 F. Supp.3d 578 (M.D. Tenn. 2022).

b) Tenn. Code Ann. § 40-39-202 – Definitions. Ruled unconstitutional by *Does #1-9 v. Lee*, 2023 WL 335639 (M.D. Tenn. Mar. 2, 2023).

c) Tenn. Code Ann. § 40-39-203 – Registration forms; time for competition; contents; photographs. Ruled unconstitutional by *Doe v. Rausch*, No. 3:20-cv-00728, 2023 WL 238524 (M.D. Tenn. Mar 6, 2023).

d) Tenn. Code Ann. § 40-39-204 – Data repository; reporting and exceptions. Ruled unconstitutional by *Doe v. Rausch*, No. 3:20-cv-00728, 2023 WL 238524 (M.D. Tenn. Mar 6, 2023); *Doe # 11 v. Lee*, 609 F.Supp.3d 578 (M.D. Tenn. 2022).

e) Tenn. Code Ann. § 40-39-205 – Printing and distribution of forms; explanation of requirements and sanctions. Ruled unconstitutional by *Doe # 11 v. Lee*, 609 F.Supp.3d 578 (M.D. Tenn. 2022).

f) Tenn. Code Ann. § 40-39-206 – Centralized record system; noncompliance; data privacy; rules and regulations. Ruled unconstitutional by *Doe v. Rausch*, No. 3:20-cv-00728, 2023 WL 238524 (M.D. Tenn. Mar 6, 2023); *Doe # 11 v. Lee*, 609 F.Supp.3d 578 (M.D. Tenn. 2022).

g) Tenn. Code Ann. § 40-39-207 – Petition or request to terminate registration requirements. Ruled unconstitutional by *Doe v. Rausch*, No. 3:20-cv-00728, 2023 WL 238524 (M.D. Tenn. Mar 6, 2023); *Doe v. Rausch*, 461 F.Supp.3d (E.D. Tenn. May 14, 2020); *Doe v. Rausch*, 382 F.Supp.3d 788 (E.D. Tenn. May 20, 2022).

h) Tenn. Code Ann. § 40-39-208 – Violations; certifications. Ruled unconstitutional by *Doe # 11 v. Lee*, 609 F.Supp.3d 578 (M.D. Tenn. 2022).

i) Tenn. Code Ann. § 40-39-209 – Removal of records; expungement order. Ruled unconstitutional by *Doe # 11 v. Lee*, 609 F.Supp.3d 578 (M.D. Tenn. 2022).

j) Tenn. Code Ann. § 40-39-211 – Establishment of residence or acceptance of employment; violations. Ruled unconstitutional by *Doe v. Rausch*, No. 3:20-cv-00728, 2023 WL 238524 (M.D. Tenn. Mar 6, 2023); *Doe # 11 v. Lee*, 609 F.Supp.3d 578 (M.D. Tenn. 2022); *Reid v. Lee*, 476 F.Supp.3d 686 (M.D. Tenn. Aug. 5, 2020).

34

k) Tenn. Code Ann. § 40-39-212 – Sex offender registration; out-of-state offenses. Ruled unconstitutional by *Doe # 11 v. Lee*, 609 F.Supp.3d 578 (M.D. Tenn. 2022).

l) Tenn. Code Ann. § 40-39-213 – License or photo identification card; offender's possession. Ruled unconstitutional by *Doe # 11 v. Lee*, 609 F.Supp.3d 578 (M.D. Tenn. 2022).

m) Tenn. Code Ann. § 40-39-214 – Registry information; disclosure requirements. Ruled unconstitutional by *Doe # 11 v. Lee*, 609 F.Supp.3d 578 (M.D. Tenn. 2022).

## CLAIMS FOR RELIEF
## COUNT 1
## VIOLATION OF THE EX POST FACTO CLAUSE

110.     The retroactive application of the Act violates the Ex Post Facto Clause of the United States Constitution, Art. I, § 10, cl. 1, because it makes more burdensome the punishment imposed for offenses committed prior to its enactment.

## COUNT 2
## VIOLATION OF THE DUE PROCESS CAUSE AS RELATED TO TRAVEL

111.     The right to travel is a fundamental right that is protected under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

112.     The Act substantially interferes with Plaintiff's ability to travel.

113.     The Act does not provide for any individualized consideration before restricting Plaintiff's right to travel.

114.     The Act violates Plaintiff's fundamental right to travel because it is not narrowly tailored to serve a compelling state interest.

35

## COUNT 3
## VIOLATION OF THE DUE PROCESS CLAUSE AS RELATED TO WORK

115.    The right to engage in the common occupations of life is a fundamental right that is protected under the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

116.    The Act substantially interferes with Plaintiff's ability to engage in the common occupations of life.

117.    The Act creates a wholesale barrier to employment. That barrier is not based on Plaintiff's fitness or capacity to work in the jobs from which he has been excluded.

118.    The Act does not provide for any individualized consideration before restricting Plaintiff's ability to engage in the common occupations of life.

119.    The Act violates Plaintiff's fundamental right to engage in the common occupations of life because it is not narrowly tailored to serve a compelling state interest.

## COUNT 4
## VIOLATION OF THE FIRST AMENDMENT

120.    The First Amendment prohibits abridgement of the freedom of speech. The Fourteenth Amendment incorporates the First Amendment against the states.

121.    The Act requires Plaintiff to report information about his Internet accounts and activity to law enforcement, which substantially interferes with access to the Internet as a forum for speech and eliminates Plaintiff's opportunities for anonymous Internet speech.

122.    The Act's requirements to report information about Internet accounts and activity is invalid under the First Amendment both on its face and as applied because it is not narrowly tailored to serve a compelling state interest and because it prohibits a substantial amount of protected speech.

36

## COUNT 5
## VIOLATION OF THE DUE PROCESS CLAUSE RELATING TO RETROACTIVITY

123.    The Due Process Clause of the Fourteenth Amendment imposes limits on retroactive legislation that is harsh or oppressive or that violates principles of fundamental fairness.

124.    At the time of his conviction, Tennessee did not have all of the present restrictions. Plaintiff is now subject to lifetime offender registration and numerous harsh and oppressive restrictions on his liberty.

125.    Retroactively imposing the Act on Plaintiff violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

## COUNT 6
## VIOLATION OF THE DUE PROCESS CLAUSE
## (CRIMINAL LIABILITY WITHOUT ACTUAL KNOWLEDGE

126.    The Due Process Clause of the Fourteenth Amendment prohibits states from imposing criminal liability for conduct that is wholly passive and does not "alert the doer to the consequences of his deed," without any proof of "actual knowledge of duty to [comply with the law] or proof of the probability of such knowledge and subsequent failure to comply. *Lambert v. People of the State of California*, 355 U.S. 225, 228-229, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957).

127.    The Act imposes criminal liability, without requiring proof of actual knowledge of the duty to comply with the Act, for passive conduct that does not "alert the doer to the consequences of his deed" including but are not limited to:

a)  Working within an Exclusion Zone;

b)  Loitering within and Exclusion Zone; and

c)  Residing within an Exclusion Zone.

37

**COUNT 7**
**VIOLATION OF THE DUE PROCESS CLAUSE REGARDING**
**VAGUENESS AND IMPOSSIBILITY**

128.    The Due Process Clause of the Fourteenth Amendment prohibits states from enforcing laws that are unconstitutionally vague. As a matter of due process, statutory requirements must be written with sufficient specificity that persons of ordinary intelligence need not guess at their meaning and will not differ as to their application.

129.    The Act contains provisions that are invalid under the vagueness doctrine because those provisions fail to provide a person of ordinary intelligence fair notice of what is prohibited under the statute, making it impossible for Plaintiff to conform his conduct to the statutory requirements and making it likely that the statute will be enforced in different ways in different places or against different people.

130.    The Due Process Clause of the Fourteenth Amendment prohibits states from enforcing laws with which it is impossible to comply. The Act contains provisions with which compliance is impossible.

131.    The parts of the Act that are void for vagueness or are impossible to comply with include but are not limited to:

a)   The prohibition on working within and Exclusion Zone;

b)   The prohibition on Loitering within and Exclusion Zone; and

c)   The prohibition on residing within and Exclusion Zone.

**LACK OF LEGAL REMEDY**

1.     Plaintiff's harm is ongoing and cannot be alleviated except by injunctive relief.

2.     No other remedy is available at law.

38

# REQUESTED RELIEF

Wherefore, Plaintiff request that this Court:

a. Issue a judgment, pursuant to 28 U.S.C. §§ 2201-2202, declaring that retroactive application of the Act violates the prohibition in the United States Constitution against *ex post facto* laws and issue a permanent injunction restraining the defendants from retroactively enforcing the Act against Plaintiff;

b. Issue a judgment, pursuant to 28 U.S.C. §§ 2201-2202, declaring that the Act unconstitutionally interferes with Plaintiff's fundamental rights to travel, to engage in the common occupations of life, to direct the education and upbringing of his children, and to engage in free speech, and issue a permanent injunction restraining defendants from enforcing against Plaintiff those provisions of the Act that interfere with these rights;

c. Issue a judgment, pursuant to 28 U.S.C. §§ 2201-2202, declaring that retroactively extending the registration period of Plaintiff violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution, and issue a permanent injunction restraining the defendants from retroactively extending Plaintiff's registration period;

d. Issue a judgment, pursuant to 28 U.S.C. §§ 2201-2202, declaring that the Act violates the Due process Clause of the Fourteenth Amendment to the United States Constitution by imposing criminal liability for passive acts without actual knowledge of the duty to comply, and issue a permanent injunction restraining the defendants from enforcing the Act against Plaintiff;

e. Issue a judgment, pursuant to 28 U.S.C. §§ 2201-2202, declaring that the Act is void under the Due Process Clause of the Fourteenth Amendment to the United States Constitution due to vagueness and impossibility and issue a permanent injunction restraining the defendants from enforcing against Plaintiff those provision of the Act that are unconstitutional;

39

f. Award Plaintiff his costs and reasonable attorney's fees pursuant to 42 U.S.C. § 1988; and

g. Grant such other relief as the Court finds just and proper.

Dated this the _3_ day of _May_____, 2023

Ricky M. Helton
TDOC ID No. 00374259
1045 Horsehead Lane
Pikeville, TN 37367-7432



Ricky Helton
BCCX Site 2
TDOC ID No. *00374259*
1045 Horsehead Lane
Pikeville, TN. 37367

RECEIVED

MAY 10 2024

U.S. District Court
Middle District of TN

Clerk of Court:
*Lynda M. Hill;*
Fred D. Thompson US Courthouse,
719 Church Street Suite 1300,
Nashville, Tennessee 37203

LEGAL MAIL

FIRST CLASS

US POSTAGE PITNEY BOWES

ZIP 37367
02 7H
0000917105    $ 003.31⁰
MAY 03 2024

LEGAL MAIL                                    LEGAL MAIL

LEGAL MAIL

LEGAL MAIL

LEGAL MAIL

Received
MAY 0 3 2024
BCCX Mailroom
Outgoing

THE DEPARTMENT OF CORRECTIONS
BCCX HAS NEITHER INSPECTED
NOR CENSORED AND IS NOT
RESPONSIBLE FOR THE CONTENTS